MAMAUX v. CAPE MAY REAL ESTATE CO.

(Circuit Court of Appeals, Third Circuit. May 26, 1914.)

No. 1824.

1. CONTRACTS (§ 94*)—VALIDITY—FRAUD.

In order that promissory representations, made as an inducement to a contract, shall invalidate such contract and entitle the other party to its cancellation, there must be an element of bad faith, an intention to deceive, or a recklessness or extravagance of statement, that is scarcely to be distinguished from bad faith.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 420–430, 1160, 1164, 1165; Dec. Dig. § 94.*]

2. CONTRACTS (§ 94*)—VALIDITY—FRAUD.

Defendant corporation was organized by men of standing and means to promote the building of a commercial harbor and summer resort on the New Jersey coast. It bought land, laid out and improved streets, and projected the making of a harbor for ocean vessels with docks connected with railroad terminals, and the building of a large hotel. Upon representations that such improvements were to be made, complainant contracted for the purchase of a lot in the plan. The representations were made in good faith, and defendant expended several million dollars in carrying them out, and they had not been abandoned. The harbor was partially dredged, the hotel built, and the government constructed jetties. *Held*, that the fact that the project had not been as completely or rapidly developed as expected or represented did not entitle complainant to a cancellation of his contract, and to recover the money paid thereon.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 420–430, 1160, 1164, 1165; Dec. Dig. § 94.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Suit in equity by Albert L. Mamaux against the Cape May Real Estate Company. Decree for defendant, and complainant appeals. Affirmed.

Harvey A. Miller, of Pittsburgh, Pa., for appellant.
John S. Weller, of Pittsburgh, Pa., for appellee.

Before BUFFINGTON and McPHERSON, Circuit Judges, and WITMER, District Judge.

J. B. McPHERSON, Circuit Judge. In September, 1904, the plaintiff entered into a written agreement with the Real Estate Company to buy No. 2083 on a plan of lots situated near Cape May, in the state of New Jersey. The price was $3,050, and the first payment of $305 was made when the agreement was signed. Nothing more having been paid, the company brought suit in January, 1909, to recover the balance of the purchase money. More than two years after that date the plaintiff filed the present bill, asking that the further prosecution of the suit be enjoined, that the contract be canceled, and that he recover the money already paid. The ground of the bill is misrepresentation of material facts, and the charges made in that behalf will appear by paragraphs 5 and 6:

"(5) Your orator further alleges that, as a special inducement to get your orator to sign the agreement, Exhibit A, and make payment of the sum of $305 at the time and before the signing thereof, defendant represented to your orator that it was about to erect a large and valuable hotel close by lot No. 2083 in said plan, at a cost of $1,000,000, or thereabouts, which was to have been completed by defendants within one year from the date of the execution of the contract Exhibit A; that the 'channel,' as marked on the plan of lots herewith filed as a part of this bill of complaint, was to have been dredged by defendant to a depth of at least 40 feet and to a width of 700 feet, protected by jetties extending 5,000 feet into the ocean; and the 'harbor,' covering about 500 acres, as marked on said plan, was to be dredged by defendant so that vessels drawing about 25 feet of water could enter said channel at any stage of the tide and find safe anchorage in the harbor; that the harbor and channel were to connect with the seven railway switches as indicated on said plan, on the inner portion of said harbor—all of which together with the putting in of railroad switches and accommodations, defendant represented it would have complete within two years from the date of the signing of the said contract and the making payment of $305 by your orator; that your orator, relying upon said representations, and believing the defendant would carry out said representations, was led to believe said lot No. 2083 was of much greater value than it in fact was, or now is, and that said lot is now of much less value than if defendant had made good the special inducements which led your orator to sign said contract, without which said inducement your orator would not have entered into said agreement and paid said $305. Your orator alleges that defendant failed to carry out the said representations which especially induced him to sign the said contract, in that said hotel was not constructed at all, costing the sum of $1,000,000 or thereabouts within one year from date of Exhibit A, and no hotel was built at all until the year of 1907, and then at a cost of about $400,000; that said channel, as shown on said plan, was not dredged within two years, nor has it yet been dredged or widened; that the jetties as represented by defendant were not put in and are not in at the present time, nor has the said harbor and channel been put in condition as alleged and represented would be done; and

defendant completely failed to put in the railway switches connecting with said harbor and channel, as represented.

"(6) That by reason of the defendant not constructing the said hotel, not dredging and widening the said channel, and not putting in the jetties, and not putting the harbor in the condition so that vessels drawing 25 feet of water could enter with safety, etc., and not connecting with the railroad as hereinbefore alleged, within the time as provided for, or not even at the present time, your orator alleges there is a failure of consideration of said contract on the part of defendant, and said contract void and fraudulent as to your orator; that your orator is entitled to recover the amount of money paid by him under said contract, namely, the sum of $305, with interest from the 19th day of September, 1904, and have said contract declared void."

In a brief opinion the District Court dismissed the bill, saying:

"Plaintiff, in substance, alleges in his bill that he was deceived as to the value of the lot at the time of making the contract by reason of representations to him that the corporation intended to make various improvements in the plan. The proofs show that the representations, so called, were not statements of existing facts, but in the nature of promises, with the single exception of the representation as to the extent of the corporation. There is no doubt from the evidence that the defendant corporation at the time had the intention to fulfill the promises, and has since attempted to carry them out with some measure of success. It is not necessary to consider these various promises in detail, or to comment on the evidence as to their fulfillment. There is no evidence at all that the defendant, or any of its agents, had any intention of deceiving the plaintiff. The plaintiff was not deceived. He saw the property. The proposed improvements were disclosed to him. He then entered into the agreement. His disappointment alone is not enough to move a chancellor in his relief."

As will be observed, the finding of facts is scanty, and needs to be supplemented from the evidence taken at the trial. The facts are as follows:

In 1904 the company undertook a development project on a large scale. The central idea of the scheme was the construction of a land-locked harbor on the Atlantic Ocean not far from Delaware Bay, the object being to furnish a safe and convenient place where sea-going and coasting vessels alike might load and discharge their cargoes, and thus avoid the delays and dangers of the river navigation between the ocean and the city of Philadelphia. An area of 500 acres was to be dredged to a depth sufficient to accommodate vessels of at least 25 feet draft; jetties to protect the inlet or channel to the harbor were to extend 4,000 or 5,000 feet into the ocean, docks and piers were to be provided, and railroad branches and sidings were to be brought into close connection therewith. A tract of meadow and beach land—afterwards divided into 7,500 lots—was to be reclaimed and filled, a large and fine hotel was to be built, streets and other improvements were to be made, and a summer resort, as well as a commercial enterprise, was to be promoted. Men of means and influence controlled the company, and for a while the enterprise occupied a good deal of public attention. The promoters expected—and the sequel proved that they were justified in expecting—that the government would be induced to build the jetties; and they expected, also, that the Pennsylvania Railroad and the Reading Railroad would build the necessary railroad connections and sidings. The scheme was attractive, and was prosecuted with vigor for two or three years; a great deal of work was done; much

dredging was done in the harbor; the government made an appropriation and built the jetties; two sidings were put down, and other railroad preparations were made; a hotel was built and equipped, and has been operated as a summer resort for several years; streets were opened, sidewalks and curbing were laid down, and grading was done; and in these and other ways a large sum of money was spent. The secretary of the company testified that $4,500,000 were put into the improvements, and that the work was still going on, although it has not been prosecuted recently with as much vigor or enthusiasm as at first. Cottages have also been built and occupied, although we are not informed as to the exact number. No one, we think, can read the testimony in full without sharing the conviction of the trial judge that the scheme was begun and has been prosecuted in good faith, with no purpose to deceive intending investors. No doubt the enterprise was speculative, but it was not fraudulent; and indeed, the charge of fraud, if made at all, is so slightly touched upon that we shall leave it out of account. Most of the representations charged in the bill were made by the company, either by agents or in a printed handbill, and most of them have been substantially fulfilled. The completion of the improvements was not promised within two years, or any other definite period, but within a reasonable time, and in view of all the evidence we find it difficult to say now that a "reasonable time" has elapsed.

[1, 2] The plaintiff's contention is that, although the representations complained of were clearly promissory, they were nevertheless material, and as they have not been completely fulfilled, he is entitled to set up their nonfulfillment as a defense to the contract. We do not think this extreme position is in accord with the great weight of authority. Here and there a decision may be found that appears to support it, but the rule is the other way. There must be an element of bad faith, an intention to deceive, or a recklessness or extravagance of statement that is scarcely to be distinguished from bad faith, before a promissory representation is to be condemned. And especially is this true where both parties have at least some common sources of knowledge, and where the purchaser does not rely wholly upon the superior information of the seller. A certain amount of confidence in the future, even if it turn out to be ill-founded, is to be expected in the promoters of any scheme that is honestly conceived and honestly carried on; and the expression of such confidence is not unlawful, even if it employ superlatives and indulge somewhat in rhetorical phrases. Custom allows a seller to praise his wares, if he does not deceive or take an unfair advantage of his better knowledge; and this is true, also, where the future course of events is the subject in question, and where the things that may happen must be more or less conjectural. We regard the scheme now under consideration as an enterprise obviously speculative, but honestly conceived and honestly prosecuted, and we do not think it discloses any intention to deceive or mislead. It is true that the sanguine anticipations of the promoters have not yet been realized, and that some of their promises have not yet been fully carried out. But much has already been done, the work is still going on, the project has not yet been given up; and, while success is apparently not

yet in sight, it is perhaps not unlikely that the time of prosperity may be nearer than is now indicated.

The subject of promissory representations is very fully discussed in the note to Fargo, etc., Co. v. Gas Co., 37 L. R. A. 593. See, also, 20 Cyc. 20. We may add that the cases referred to in the appellant's brief have all been considered; most of them seem to be clearly distinguishable, as they involved either false representations concerning existing facts, or intentional deception.

The decree dismissing the bill is affirmed.