## BOWATER et al. v. WORLEY.

No. 577.

Circuit Court of Appeals, Tenth Circuit.

March 28, 1932.

Preston C. West and E. J. Lundy, both of Tulsa, Okl. (Poe, Lundy & Morgan and West, Gibson, Sherman, Davidson & Hull, all of Tulsa, Okl., on the brief), for appellants.

Neal E. McNeill, of Tulsa, Okl., for appellee.

Before LEWIS and COTTERAL, Circuit Judges, and VAUGHT, District Judge.

COTTERAL, Circuit Judge.

Bowater, Pohl, and Allison appeal from a judgment against them for $10,150, based on a verdict of a jury, in a suit they brought against Worley to recover $4,500 as the proceeds of a sale by him of 1½ acres of mineral royalty in Oklahoma. They assign errors upon the refusal and giving of instructions to the jury.

In their petition, the plaintiffs alleged that in March or April, 1929, Bowater and Worley entered into a prospective arrangement for the purchase and sale of oil and gas royalties in the Mid-Continent field, with a purpose that Bowater might obtain money from others for such investment; that in order to demonstrate the resulting profits, it was agreed Bowater would obtain from his associates for defendant's use in buying and selling royalties, $15,000, to be remitted to Bowater without profit to defendant; that $6,000 thereof, jointly contributed by plaintiffs, was sent to defendant for the purchase under that arrangement of 10 acres of royalty; that he sold 8½ acres thereof for $16,-150, remitted that sum to Bowater, and it was distributed to him and his associates; that in May, 1929, Worley sold the remaining 1½ acres of the royalty for $4,500, but has failed and refused to remit the same to plaintiffs.

The defendant in his answer entered a general denial and pleaded an oral contract made in March, 1929, between him and Bowater to organize a syndicate for the purchase of oil and gas royalties operative when Bowater should subscribe $150,000 to it. The syndicate agreement was put in writing and accepted. By its terms, the subscribers were to contribute $150,000 to purchase the royalties and hold proportionate interests. Bowater was to make the purchases and take over the proceeds, as trustee, and Worley was to direct the purchases. The profits were, first, to repay subscriptions; and, next, 25 per cent. to each Bowater and Worley. They agreed that each would subscribe $5,000.

It was alleged Bowater advised Worley of a delay in raising the subscriptions, except to the extent of $15,000, and if Worley could invest that sum and make a quick return and good profit, the balance of the syndicate money could be raised in 24 hours; that Worley then wired Bowater for $6,000 he had paid for 10 acres of royalty; that Bowater delayed remittance until he had required a deed therefor and had information of the value of the royalty; that Worley delayed acceptance of the $6,000 for the syndicate, and waiving his profit on the royalty, until Bowater reassured him the syndicate money would be raised and his financier would advance it, and on the representation and agreement that would be done as a transaction of the syndicate when there should be a demonstration of a good profit on the investment of $6,000, Worley accepted that sum, made a deed to Bowater for the 10 acres of royalty, sold the 8½ acres for $16,150, and on April 30, 1929, sent a cashier's check therefor to Bowater as trustee. (It was also alleged that later Worley wired Bowater for $10,000 to purchase another 10 acres of royalty and it was received and so invested. That transaction is not involved in this suit.)

It was further alleged that on April 25, 1929, Bowater advised Worley he could not raise the $150,000 for the syndicate and asked that the check for $16,150 might be cashed not as trustee and released from the syndicate, and it was agreed for that consideration and the advancements plaintiffs would waive any claim to the 1½ acres if they did not raise the syndicate money; and Worley had his bank wire Bowater's bank to pay the check for $16,150 to Bowater personally.

It was further alleged that the representations of Bowater that he would raise the subscriptions of $150,000 for the syndicate in 24 hours and his financier would invest it were false and made to deceive Worley and induce him to place the original 10 acres of royalty in the syndicate, and Worley believing the said representations were made in good faith accepted the $6,000 and made the sale for $16,150 and remitted same to Bowater.

It was further alleged that the plaintiffs breached their contract to raise the syndicate subscriptions, and by reason thereof and said waiver as to the remaining 1½ acres of royalty, the defendant is absolved from plaintiffs' demand for the proceeds of that tract.

In his cross-petition, the defendant alleged the said representations made by plaintiffs through Bowater to induce defendant's acceptance of the $6,000 as the purchase price of the 10 acres of royalty for the benefit of the syndicate and the sale by defendant of the 8½ acres of royalty and remittance of the proceeds to Bowater, were false and fraudulent and made to deceive the defendant, and were relied upon by him, to his damage in the sum of $10,150, for which he prayed judgment.

The plaintiffs replied with a general denial and an averment that the defendant breached his agreement to transmit the moneys on the sale of royalty, thereby releasing the plaintiffs' obligation and rendering it im-

possible to raise the $150,000; and they denied the falsity of Bowater's representations.

It is unnecessary to fully review the evidence. It will be noticed so far as material, in disposing of the questions raised. The various transactions occurred as set out in the pleadings. The dispute is with regard to the contractual and attending circumstances.

The last two of the instructions tendered by the plaintiffs would have required, if they had been given, a verdict in plaintiffs' favor and were not justified, because findings of fact on disputed evidence were essential to a verdict. The other requests proceeded upon the theory that Bowater was not obligated to raise the subscriptions until Worley demonstrated the success of the investment venture in royalties and accounting for the proceeds, as conditions precedent to the subscriptions, and finally this was true, unless Bowater did not in good faith intend to attempt to raise them. The defendant insists that the requests were not proper as they assumed there was no contract to organize the syndicate, and that the last-stated clause of the requests was embraced in the charge of the court.

■ The court submitted the issue of a contract to the jury and charged that if the arrangement of the parties was that the plaintiffs' investment and a rendition of the proceeds of sale were to demonstrate the success of later investments, the plaintiffs were entitled to recover the $4,500 of the defendant; but that if they entered into the contract, whereby Bowater was to raise and furnish the syndicate money, and the plaintiffs breached it, they were not entitled to recover that demand. The only exception plaintiffs saved to this instruction was on the ground that the defendant had the duty in any event to render or impound the moneys he received, but it was not well taken, as it assumed their version of disputed facts.

■ There is no dispute that the $6,000 was sent by Bowater to Worley, he accepted it as a reimbursement of his outlay in purchasing 10 acres of royalty, sold the 8½ acres for $16,150, and remitted that amount by cashier's check to Bowater, as trustee, and later had his bank wire authority to Bowater's bank to pay the check to Bowater personally. But it was a question of fact whether the parties entered into the contract as defendant claims and the sale proceeds belonged to the syndicate. There appears to be substantial evidence in the record of a meeting of the minds of Bowater and Worley upon such terms of contract. The instructions tendered were erroneous in authorizing a recovery without regard to a contract, and refusal to give them was therefore proper.

■ The question of Bowater's fraud was submitted to the jury, and the charge was that if the jury found it occurred as alleged in the cross-petition, whereby the defendant lost his profit of $10,150, he might have his damages in that amount. This part of the charge was not excepted to and it is not assigned as error. The complaint is that plaintiffs' request on the subject heretofore referred to was refused. But as the court gave an equivalent instruction there was no occasion to repeat it in the form requested by the plaintiffs.

It is argued this was error because the representations of Bowater regarding the syndicate were but promissory and not actionable. In other words, they were expressive only that he would endeavor in the future to raise the subscriptions. But the representations were partly of existing facts. The evidence tended to establish that Bowater repeatedly represented he was able to and had arranged to raise the subscriptions and intended to do so, that these representations were not true, that he had not even communicated the syndicate project to his associates, and that he had not disclosed to them that he was dealing with Worley. The evidence further tends to show the defendant was deceived by and acted upon the representations.

■ If there was the contract relative to the syndicate as defendant claims, then it is not disputed a substantial breach of it by the plaintiffs by nonperformance on their part preceded his refusal to perform it and excused him from further performance by rendering the proceeds of the second sale. Kempner v. Goddard Gro. Co. (C. C. A.) 5 F.(2d) 807. And if the representations were fraudulent and the defendant relied on them to his injury, the parties dealing at arm's length, the defendant was entitled to his damages for the deceit. 27 C. J. pp. 18, 35. Even a promissory representation made in bad faith and with an intention to deceive is to be condemned. Mamaux v. Cape May R. E. Co. (C. C. A.) 214 F. 757.

One remedy sought by the defendant was to recover and retain the proceeds of the second royalty sale by virtue of an agreed waiver. The remittance check for the $16,-150 was made payable to Bowater, trustee, the capacity in which he was designated in the syndicate agreement. He could not cash the draft, asked defendant to have his bank wire Bowater's bank to eliminate the word "trustee," and it was done on Bowater's statement

that the defendant was protected by the 1½ acres and the 10 acres royalty. But defendant's own testimony was merely that Bowater assured him he was safeguarded by the title he held to that tract. There was no sufficient evidence of the waiver, and the trial court properly omitted to submit the matter to the jury.

■■ But the defendant was entitled to his damages, if the jury found there was a contract to finance the syndicate and plaintiffs first breached it, or the alleged deceit was practiced on him by Bowater. The measure of damages was just compensation or indemnity in either case. 17 C. J. p. 716; 27 C. J. p. 83. It was an irrelevant inquiry on the question of damages whether there was a default consisting of a tort or breach of contract. Hetzel v. B. & O. R. R., 169 U. S. 26, 18 S. Ct. 255, 42 L. Ed. 648.

There was no proof of defendant's damages in this case, other than the showing of the undisputed profits on the royalty investments. His damages were at least the aggregate of the profit of $4,500 which he retained and of $10,150 he remitted to Bowater, which the jury awarded to him, and which represented the first sale proceeds, less plaintiffs' outlay. These sums show his actual loss in not dealing for his own benefit.

We find no reversible error in this case, and it is therefore affirmed.