### METROPOLITAN LIFE INS. CO. v. BANION et al.

No. 1779.

Circuit Court of Appeals, Tenth Circuit.

July 27, 1939.

Rehearing Denied Oct. 12, 1939.

William E. Mullen, of Cheyenne, Wyo., and Horace N. Hawkins, of Denver, Colo. (A. R. McMicken, of Rawlins, Wyo., Harry Cole Bates, of New York City, and Edward J. Boughton, of Philadelphia, Pa., on the brief), for appellant.

W. J. Wehrli and Marvin L. Bishop, Jr., both of Casper, Wyo. (E. E. Enterline, Madge Enterline, and G. R. Hagens, all of Casper, Wyo., on the brief), for appellees.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

BRATTON, Circuit Judge.

This is a suit to recover on a policy of life insurance issued by Metropolitan Life Insurance Company insuring the life of Sewell S. Combs, of Casper, Wyoming, and containing a double indemnity provision in case of accidental death. Hazel Combs, wife of the insured, was the designated beneficiary if living; otherwise Lloyd Russell Combs, natural son of Hazel Combs by a former husband and adopted son of the insured, was the beneficiary. The policy was issued in May, 1934; the first quarterly premium was paid; and the insured was shot to death in June. Hazel Combs, Lloyd Russell Combs, and Harold Bard Combs, another adopted son of the insured, were his sole heirs at law. Both sons were minors. Hazel Combs was charged with the murder of the insured.

Forrest Banion, brother of Hazel Combs, was appointed administrator of the estate of the insured in July. In November, Hazel Combs assigned in writing all of her interest in the policy to such administrator. The court having jurisdiction of the estate approved the assignment and directed the administrator to take the necessary steps to recover on the policy. In December, the administrator instituted this suit in the state court in Wyoming for that purpose. The petition alleged the issuance of the policy with the double indemnity provision, the payment of the first quarterly premium, the accidental death of the insured, the assignment, and demand for payment. The company seasonably removed the case to the United States Court for Wyoming. In January, 1935, Hazel Combs committed suicide while in jail awaiting trial on the charge of homicide. Banion was appointed administrator of her estate, and also guardian of the estate of Lloyd Russell Combs. Arthur Combs was appointed guardian of the es-

tate of Harold Bard Combs. In February, the company answered that the minds of the insurer and the insured had never met on the matter of a contract of insurance and for such reason the policy had never become a completed contract; that the policy was obtained by Hazel Combs through fraud practiced on the company pursuant to a preconceived scheme to cause its issuance, to murder the insured, and to collect the proceeds; and that false answers were made to certain questions propounded in the application for the policy. On the same day the company filed a suit in equity in the United States court for Wyoming seeking cancellation of the policy on the same grounds of fraud and failure of the meeting of the minds as were pleaded in the answer in this action. Banion, as administrator of the estate of Sewell S. Combs and as administrator of the estate of Hazel Combs, and the two minors were joined as parties defendant. The company sought in the equity action to stay proceedings in this suit until final disposition could be made of the issues in the equity proceeding. The stay was denied, and that action was affirmed by this court. Metropolitan Life Insurance Co. v. Banion, 10 Cir., 86 F.2d 886.

Banion, as administrator of the two estates, and as guardian of the estate of Lloyd Russell Combs with the approval of the court having jurisdiction of such estates, assigned, transferred and conveyed to the two minors all right, title, and interest, which Hazel Combs or her estate may have had in the proceeds of the policy after the making of the assignment to the administrator of the estate of her deceased husband. Thereafter Banion, as administrator of the two estates, and as guardian of the estate of Lloyd Russell Combs, and Arthur Combs, as guardian of the estate of Harold Bard Combs, entered into a written contract in which it was provided that they should exert a joint effort to recover on the policy; that each should prosecute this action as a party plaintiff and claim the proceeds of the policy, not alone as he might be entitled to do by virtue of such assignments, but also as he might be able to do under the provisions of section 88-4009, Wyoming Revised Statutes 1931, in the event it should be established that the beneficiary in the policy took or procured another to take the life of the insured; and that the proceeds of the policy, after payment of attorneys fees

should be distributed to the minors, share and share alike. The agreement was approved by the courts of administration.

Banion, as administrator of the estate of Hazel Combs, and as guardian of the estate of Lloyd Russell Combs, and Arthur Combs, as guardian of the estate of Harold Bard Combs, asked leave of court to join as parties plaintiff in this action and to adopt the allegations of plaintiff's petition as well as any supplemental pleadings which plaintiff might file. Such leave was granted over the objections of the company. Plaintiffs then filed an amended and supplemental petition. The issuance of the policy with the double indemnity provision, the payment of the first quarterly premium, the death of the insured, and the assignment in which Hazel Combs conveyed her interest in the policy to the administrator of the estate of her deceased husband, were alleged in language substantially identical with that contained in the original petition. In addition, the pleading alleged the death of Hazel Combs, the assignment in which any interest she may have had in the policy after the making of the assignment to the administrator of her deceased husband was conveyed to the minors, and the contract in which it was agreed that the several plaintiffs should exert their joint effort to recover, not only as they might be entitled to do by virtue of such assignments but also under the provisions of the Wyoming statute in the event it should be established in the case that the beneficiary took the life of the insured or procured another to do so. Copies of the policy, the assignment to the administrator of the estate of the insured, the order of the court approving such assignment, the agreement for joint effort in prosecuting the action and providing for distribution of the moneys, and the order of the court approving such agreement were attached and made parts of the pleading. The company answered setting up the same affirmative defenses as were pleaded in the original answer. By reply, plaintiffs denied that the beneficiary took the life of the insured, but alleged that in the event it should be proved at the trial that she did so, Banion, as administrator of the estate of the insured, and as guardian of the estate of Lloyd Russell Combs, and Arthur Combs, as guardian of the estate of Harold Bard Combs, were entitled to the proceeds of the policy, and that they claimed and demanded recovery thereof under section 88-

564

4009 of the statutes. The prayer was that plaintiffs have judgment as sought in their amended and supplemental petition, but that in the event it developed on the trial that Hazel Combs took the life of the insured judgment be rendered for the administrator of the estate of the insured, to be distributed to the minor heirs, share and share alike, in accordance with the statute.

The case was tried twice. The jury in the first trial failed to agree. The second trial resulted in a verdict for plaintiffs. Judgment was entered for $99,500 that being the face amount of the double indemnity provision with accrued interest. The company appealed.

■ A very earnestly urged contention is that the court should have given the requested peremptory instruction directing a verdict for the company. It is argued that the only cause of action alleged in the amended and supplemental petition was by the administrator of the estate of the insured; that such cause of action was based on the assignment of Hazel Combs to such administrator; that it was not alleged that Hazel Combs took the life of the insured or procured another person to do so; that no cause of action vested in any of the other parties plaintiff unless she murdered him or caused another to do so; that therefore the only cause of action was on such assignment; that the evidence showed conclusively that she took the life of her husband and thus extinguished her right to the proceeds of the policy; and that for such reasons the verdict should have been directed. Section 88-4009, Revised Statutes of Wyoming 1931, provides that the beneficiary in a contract of insurance who takes or procures another to take the life of the insured shall not be entitled to the proceeds of such insurance, and that in such instance the benefits which otherwise would accrue to such beneficiary on the death of the insured shall become subject to distribution among the other heirs of the deceased according to the rules of descent and distribution. The statute thus makes it plain that in Wyoming the murder of an insured by the beneficiary does not relieve the insurer of liability. It merely transfers the right to the proceeds of the insurance to the other heirs of the deceased to be distributed according to the laws of the state relating to descent and distribution. Hazel Combs was en-

titled to the proceeds of the policy unless she murdered the insured; and in the event she committed the homicide the two minor heirs became the beneficiaries. It was said in Metropolitan Life Insurance Co. v. Banion, supra, that in such circumstances the administrator of the estate of the insured could recover on the policy for distribution of the proceeds to the minor beneficiaries. But the cause of action pleaded was not based on the assignment. It was based on the contract of insurance. Unless there was fraud in the procurement of the policy or a failure of meeting of the minds, the company is liable to some one. The amended and supplemental petition and the reply, construed together, pleaded facts which entitled one or more of plaintiffs to recover whether the beneficiary took the life of the insured or not. While not so in form, in substance and effect two separate causes of action were pleaded in the alternative.

■ All parties having any right to the proceeds of the contract under any conceivable situation, or the right to recover under any possible contingency, were parties plaintiff. The issues of fraud and failure of the minds to meet were tried at length. The jury resolved such issues against the company. The judgment adjudicates the rights of all parties. Its payment will extinguish the obligation of the company and protect it against subsequent liability. The procedure adopted was not objectionably inappropriate to the circumstances. On the contrary, it was reasonably adapted to the situation, and the company was not prejudiced by the fact that the verdict and judgment were in favor of all plaintiffs. The recovery was for the sole benefit of the two minor heirs of the insured and the avails will be distributed to them in equal shares. Neither the estate of Hazel Combs nor that of Sewell S. Combs as assignee of Hazel Combs is the beneficiary of any part of such recovery. It would be an unwarranted impingement upon justice to reverse the judgment and remand the case for amendment of the pleadings and a third extended trial on the insubstantial contention that the amended and supplemental petition stated a cause of action only on the assignment given by Hazel Combs to the administrator of the estate of her deceased husband, and that the facts did not justify recovery on such cause of action.

It is also contended that a verdict should have been directed for the company for the reason that there was not a meeting of the minds of the insurer and the insured on the matter of a contract of insurance. The company did not maintain an agency in Wyoming. The negotiations relating to the policy were conducted through correspondence. They began with a letter written to the company in November in which inquiry was made concerning a policy of $40,000, insuring a male person, and containing a double indemnity provision. The name of Hazel Combs was signed to that letter. A second letter was written the following day in which reference was made to the previous one. Inquiry was made in it about a policy in the same amount payable at the end of twenty years. The name of the insured was appended to it, and it disclosed that he was the applicant. A third letter was written about two weeks later making inquiry as to the cost of such a policy containing disability and double indemnity provisions. The name of the insured was signed to it. The company wrote the insured explaining different kinds of policies and quoting rates on twenty-year, thirty-year, and endowment policies. A specimen of a thirty-year policy was enclosed for his inspection. An application blank was also enclosed and he was invited to complete, sign, and return it to the company. The application was partially filled out, dated January 15, 1934, signed by the insured, and forwarded to the company. Some of the blanks were not filled out and it was returned for completion. It was completed and again sent to the company. Hazel Combs communicated with the two physicians in Casper designated by the company to make physical examinations; she arranged for them to come to the office of the insured and there conduct their examinations; and she paid each of them $5.00 for the extra time and trouble in coming to the office. In the course of the history given to the medical examiners, the insured disclosed that he once had a tubercular condition. Growing out of that disclosure the company requested one of the physicians to obtain an X ray of the chest. The physician advised Hazel Combs of the request. She went to his office, advised him that the insured did not wish to be bothered further about the matter, and attempted to bribe him to get the application approved and the policy issued. The physician wrote the company that he had been unable to secure the X ray, and that according to the statement of the wife of the insured he did not wish to be bothered further. Soon after receiving that information the medical department of the company marked the application declined but the insured was not advised of that action. The insured, his wife, and Lloyd Russell Combs went to Illinois in February, 1934, and remained there more than sixty days. While there Hazel Combs wrote the company suggesting that its physician at that place make the X-ray examination. The company replied that it was arranging with its physician to do so. She sought to bribe the physician to co-operate with her in having the examination made of the chest of some other man. She also sought to bribe two insurance agents there to act in concert with her in preparing and submitting a fictitious application for insurance and securing a policy on it. But none of the persons yielded to her overtures. She and her son and a man went to the office of the physician for the company, and she introduced the man as her husband. The physician made an X ray of his chest and one of hers. That made of the man was forwarded to the company. The son testified unqualifiedly that he went to the office of the physician with his mother and father, and that the physician X-rayed their chests. There was no evidence to the contrary. The X ray was forwarded to the company, and it then determined to issue a special class, whole life policy. It wrote the insured in March that as the result of the further medical examination which he recently underwent, it was prepared to offer him insurance but not at standard rates. It was stated in the letter that if he cared for a whole life policy the company was willing to entertain his application for any amount he was prepared to consider. Rates were quoted, and it was stated that for a specified additional premium a double indemnity provision would be included. The attention of the insured was called to a discrepancy in his application and in the reports of the physicians respecting to his age, and he was asked to advise which was correct. A reply was written to the company in which it was stated that the whole life policy was fine, that the age of the insured was forty-seven, that a check for $555.-70 which included the additional cost of a double indemnity provision was enclosed, that the premium would be paid quar-

terly, that they would be in Casper shortly, and to mail the policy to him there. The company wrote insured at Casper acknowledging receipt of the check, calling attention to the fact that it was for less than the required amount, requesting that another check be sent for the difference, and requesting that some authentic record in respect to the date of his birth be forwarded. The family bible or a birth or baptismal certificate was suggested. The family bible record, a statement made by the father of the insured as to the date of his birth, and a check in blank were forwarded to the company. The company wrote the insured on May 4th, acknowledging the data relating to his age and expressing satisfaction with it, and transmitting the policy. The letter stated that it gave the company a great deal of pleasure to enclose his policy countersigned in acknowledgment of payment of the initial quarterly premium of $640; that an amendment form in duplicate was enclosed, and requested that he complete it, returning one copy to the company; and that the blank check had been filled out for $84.30 covering the balance due on the premium, including the extra charge for the double indemnity provision. One copy of the amendment, purporting to bear the signature of the insured, was returned to the company but the other copy was not attached to the policy. Other facts and circumstances were established but it is not necessary to detail them here.

According to the testimony of experts in handwriting some of the blanks in the application were filled in the handwriting of Hazel Combs and some in the handwriting of the insured; she wrote and signed the name of her husband to the letters written to the company; she signed his name to the small check; she wrote the letters transmitting both checks but there was no evidence as to the signature to the larger one; she signed his name to the letter requesting a relative to send the family bible and a statement of his father bearing upon the date of his birth; and she signed his name to the amendment to the application. In sum, it may be said that she was very active in securing the issuance of the policy; that she forged the name of her husband to the several letters written to the company; and that she made repeated attempts at bribery in furtherance of her efforts. But that evidence did not stand alone. There was evidence that the insured signed the original application in three separate places; that he submitted to two separate physical examinations in his private office in Casper before going to Illinois; that he furnished two specimens of his urine in connection with such examinations; that he submitted to the X-ray examination in Illinois; that the checks were paid out of the bank account carried in his name on which he drew checks and on which she also drew checks to which she signed his name by her; that soon after returning to Casper in May, he stated to the young man who had been in his office during his absence that he had ten thousand dollars of government insurance and forty thousand dollars with the Metropolitan Life Insurance Company; that he stated to a representative of the American Legion, in connection with Veteran's claims, that he had just passed a physical examination for a good sized policy of insurance and inquired what effect, if any, it would have on his disability compensation being paid by the government; that on being advised that it would not have any effect he stated that he was pleased to receive the information as he had just passed the examination and got a good sized policy and that he would need the compensation to help pay the premium on it. The policy was mailed to the insured. There is no evidence as to its receipt. After the death of the insured and while Hazel Combs was confined in jail, she wrote a relative that it was in the basement of their apartment in Casper and directed that it be delivered to an attorney. The policy in suit, the government insurance, a copy of the will of the insured, a copy of the will of Hazel Combs, and other papers were found there, but no evidence was submitted as to the time or circumstances under which they were placed there. Thus the record is not conclusive as to whether insured knew that the increased premium was exacted, as to whether he signed the check for $555.70 given in part payment of the premium, as to whether he received the policy in person, and as to whether he placed it in safekeeping and preserved it until his death.

The application signed by the insured and submitted to the company, a copy of which was attached to the policy, was for a straight life policy. No mention was made of a double indemnity provision. The policy issued was a special class, whole life policy. It contained a double indemnity provision, required a larger premium

and was different in certain other respects from a straight life policy. But an insurance company may make a binding contract of insurance by issuing and delivering the policy and accepting the premium upon it, even though the insured applied for a different kind of policy. The issuance, delivery, and acceptance of the policy, and the payment, acceptance, and retention of the premium can constitute an enforceable contract of insurance despite the fact that it departs in some respects from the policy outlined in the application. The evidence and its reasonable inferences presented an issue of fact as to whether the minds of the parties met. That issue was fairly submitted to the jury, and it was resolved against the company.

█ Stress is laid on the point that the amendment in duplicate to the application was not signed by the insured, one copy attached to the policy, and the other returned to the company. The original application was attached to and made a part of the policy. The policy provided that it and the application should constitute the entire contract between the parties. Section 57-224, Wyoming Revised Statutes 1931, provides that no policy shall be issued which does not contain a provision that the policy and the application therefor, a copy of which must be endorsed thereon or attached thereto when issued, shall constitute the entire contract between the parties. The letter transmitting the policy indicated clearly that it was issued and delivered. There was no statement in it that the company intended or understood that the policy was not fully issued or that it was not to become effective until the amendment to the application was signed. No such condition or understanding was stated or indicated. After the issuance and delivery of a policy in the circumstances disclosed here, the insurance company cannot be heard to say in the face of the statute that no binding and completed contract exists for the reason that the amendment to the application was not signed and a copy attached to the policy.

█ It is further contended that the court should have directed a verdict for the company for, the reason that the policy was procured by Hazel Combs through fraudulent means, and with the present intent to murder the insured and then collect the proceeds. Much of the evidence urged in support of the contention has been stated. There is no need to detail it again. In addition, there was evidence, some direct and some circumstantial, which tended strongly to show that Hazel Combs negotiated for the purchase of a revolver in Illinois; that on the way back to Casper she did purchase one at a pawnshop in Cheyenne; that she obtained six loaded shells for it at the shop of Banion in Casper; and that she shot and killed the insured with it. But there was no evidence that she induced her husband to sign the application. He may have signed it of his own choice and without influence; he submitted to the physical examinations in Casper; he submitted to the X-ray examination in Illinois; he may have signed one of the checks; and he may have received and retained the policy. He did not make false statements or practice other fraud on the company; he acted in perfect good faith. There was evidence from which the jury could find that the company acted upon the application which he signed, upon the medical examinations, and upon the X-ray examination rather than to its prejudice as the result of any fraud on the part of Hazel Combs. The evidence presented an issue of fact for the jury. Again the issue was fairly submitted, and again the jury resolved it against the company.

█ Complaint is directed to the refusal of the court to give sixteen instructions requested by the company. The first was a peremptory instruction. What has already been said makes disposition of it. We do not stop to state the substance of the others. It may be conceded, without deciding, that they were severally correct statements of law. But the court instructed the jury upon every material issue in the case. The instructions were full, fair, and accurate, so much so that no exceptions were taken to them. No error arises from the refusal to give a requested instruction where the instructions of the court are reasonably complete and accurate and cover all material issues in the case. Tingley v. United States, 10 Cir., 34 F.2d 1; Bowater v. Worley, 10 Cir., 57 F.2d 970; Detroit Fire & Marine Ins. Co. v. Okla. Terminal Elevator Co., 10 Cir., 64 F.2d 671; George v. Wiseman, 10 Cir., 98 F.2d 923; Troutman v. United States, 10 Cir., 100 F.2d 628.

█ It is argued that the court committed error in refusing to allow the company to file its motion for a new trial.

The validity of the rule requiring leave to file a motion for new trial is challenged. It is unnecessary to determine the question here. A copy of the motion which the company desired to file was attached to the motion for leave to file, and it was before the court. The memorandum opinion of the court in denying leave to file shows clearly that the court carefully and painstakingly considered the motion, and that the denial of leave to file was predicated upon the ground that the motion for new trial lacked merit. The petition for leave to file a motion for new trial with a copy of the motion attached are to be regarded as a motion for new trial. Davis v. Livingston, 9 Cir., 13 F.2d 605. It is well settled that a motion for new trial is addressed to the sound judicial discretion of the trial court and its action thereon will not be disturbed on appeal unless it appears that there was an abuse of discretion. Maloney Tank Manufacturing Co. v. Mid-Continent Petroleum Corp., 10 Cir., 49 F.2d 146; McPherson v. Cement Gun Co., 10 Cir., 59 F.2d 889; Southern Pac. Co. v. Klinge, 10 Cir., 65 F.2d 85; Neugen v. Associated Chautauqua Co., 10 Cir., 70 F.2d 605; Century Indemnity Co. v. Shakespeare, 10 Cir., 74 F.2d 392. No abuse of discretion is apparent here.

The remaining contention is that certain parts of the arguments made by counsel for plaintiffs to the jury were improper and prejudicial. Reference was made in the course of the arguments to the company as a foreign corporation without an agency in Wyoming, to its coming into the state and assuming the role of prosecuting a dead woman, to its having the moral courage to plead the laws of Wyoming, to its bringing swivel-chair men who sit in their offices in New York and smoke high-priced cigars to Wyoming to urge a jury to exonerate them, to it coming with ill grace for the company to charge in its answer that the insured was a habitual drunkard and then to abandon such defense, to a verdict for plaintiffs costing the policyholders of the company only sixteen cents each, to the minor sons of the insured as orphan boys, to the responsibility borne by counsel in protecting such for orphans during the preceding three years, to such responsibility then being passed on to the jury, to an attorney in Colorado voluntarily attending the trial and testifying to statements which Hazel Combs made to him while in jail, and to an attorney in Colorado then being under indictment charged with placing of a dictograph in the statehouse. The arguments of the attorneys for plaintiffs were taken in shorthand and are in the record. The parts attacked were incorporated in the motion for new trial. Manifestly the arguments went too far and cannot be sanctioned in point of propriety. But no objection was made or exception taken at the time. Counsel for the company remained silent. The question was first called to the attention of the court in the motion for new trial. Furthermore, no record was made of the arguments of counsel for the company and it, therefore, is impossible to know whether the arguments in question were provoked by arguments of opposing counsel. Ordinarily a judgment will not be reversed on the ground of improper argument where all arguments are not in the record so that it can be determined whether the parts drawn in question were provoked or made in response. Murphy v. United States, 8 Cir., 39 F.2d 412; Vause v. United States, 2 Cir., 53 F.2d 346; Chicago & N. W. R. Co. v. Kelly, 8 Cir., 74 F.2d 31; United States v. Dilliard, 2 Cir., 101 F.2d 829. However, courts will correct error in rare instances where it appears that a verdict was the result of passion aroused through extreme argument which clearly stirred the resentment and aroused the prejudice of the jury even though no objection was made or exception taken at the time. New York Central R. Co. v. Johnson, 279 U.S. 310, 49 S.Ct. 300, 73 L.Ed. 706.

Here, despite the failure of counsel for the company to complain at the time of the arguments, the court instructed the jury that they should disregard all matters concerning the comparative financial situation of the parties; that the question of property rights is determined in courts upon the principles of right, equity, and justice, and not through sympathy for any litigant whether he be rich or poor, adult, minor, orphan, or otherwise; that the arguments of counsel are helpful to a jury but it should be borne in mind that they are not evidence, merely their views as to what the evidence shows; and that the jury must rely upon their own recollection of the evidence. Considering the whole record, it cannot be said to be apparent that the arguments so stirred the jury that the verdict was the result of passion or prejudice.

The judgment is affirmed.