## TELLURIDE POWER CO. v. WILLIAMS.
### No. 3512.

Circuit Court of Appeals, Tenth Circuit.

Dec. 2, 1947.

P. T. Farnsworth, Jr., of Salt Lake City, Utah (H. R. Waldo and W. Q. Van Cott, both of Salt Lake City, Utah, on the brief), for appellant.

Edward F. Richards, of Salt Lake City, Utah (Harley W. Gustin, of Salt Lake City, Utah, on the brief), for appellee.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

·BRATTON, Circuit Judge.

James D. Williams, hereinafter referred to as Williams, instituted this action against Telluride Power Company, hereinafter referred to as the company. The complaint was in two counts. It was alleged in the first count that Williams operated a mine in Utah; that the company furnished the electric energy for the operation of the mine; that the mine was equipped with an underwater motor and pump; that the company changed its transformers used in connection with the furnishing of the energy; that by the change, the company negligently reduced the supply of energy to such extent that the motor and pump would not operate; that after being advised that the motor and pump would not operate, the company made no proper examination to determine the cause of the failure to operate; that after being requested and directed to switch back

to the transformers formerly in use, the company negligently delayed the making of the reinstallation; and that as the result of the negligence the mining property was flooded. The second count of the complaint alleged that the parties entered into a written contract which obligated the company to furnish electric energy for the operation of the mine not to exceed 200 horsepower continuously; that the continuous operation of the motor and pump was essential to the underground workings of the mine; that during the period of eight days the company neglected and failed to furnish or supply continuous energy sufficient to operate the property and installations, particularly the motor and pump; and that as the result of the negligence of the company the pump failed to operate and the property was flooded. By answer, the company pleaded that it discharged in full its obligations under the contract, and further that the change in transformers was made pursuant to the request and direction of Williams. The cause was tried to a jury. The court submitted to the jury only one issue of negligence. It was whether the company delayed for an unreasonable length of time to reinstall the transformers formerly in use, pleaded in the first count of the complaint. The cause of action based upon breach of the contract pleaded in the second count was not submitted to the jury. A verdict was returned for plaintiff, judgment was entered upon the verdict, and defendant appealed.

 The company contends that there was not evidence tending to show negligence on its part, and that therefore the court should have directed a verdict in its favor. Evidence was adduced which tended to establish these facts. In supplying electric energy to Williams, the company used three Converse transformers at its substation. It was approximately five miles from the substation to the mining property. While the Converse transformers were in use, the motor and pump operated efficiently. But the voltage made available to Williams exceeded the maximum specified in the warranty of the manufacturer of the motor and pump. Williams requested the company to reduce the voltage in order to bring it within the limits of the warranty.

In response to that request, the company advised Williams that as soon as it could release a bank of transformers then in use elsewhere it would install them at the substation. Later, the three Converse transformers were removed and two Allis Chalmers transformers substituted. The foreman of the mining property shut off the power at the designated time so that the change in transformers could be made. That was done on Saturday. Immediately after the change, it was discovered that the motor would not start and attain maximum speed so that the pump could deliver water at the point of discharge. Agents of Williams and agents of the company co-operated in efforts to correct the situation but were unable to do so. On Monday, Williams requested the company to reinstall the Converse transformers in order that the pump could be started. On Wednesday, a representative of the manufacturer of the motor and pump also requested the company to reinstall the Converse transformers; on Thursday the Converse transformers were placed back in service; and the motor and pump immediately resumed operations. The change in transformers was made pursuant to the request of Williams. It was made in good faith, was intended to bring the voltage of the power furnished within the warranty covering the motor and pump, and was intended by both parties to be within the provisions of their contract. It therefore is plain that the change did not constitute actionable negligence on the part of the company. But immediately after the change, the parties discovered that it failed to accomplish the desired result. It was also discovered that danger of the mine being flooded was immediately at hand. The company was a public utility engaged in furnishing electric energy to the public, including Williams. One of its duties was to furnish means and facilities reasonably necessary, adequate, and adapted to the accomplishment of that end. The law imposed that duty upon the company, entirely apart from any of its contractual obligations to its consumers of electric energy. The change in transformers having been made at the request of Williams, the company was not under any duty to reinstall the Converse trans-

formers until requested to do so. But the request for the reinstallation was made on Monday. The Converse transformers were immediately available and could have been reinstalled within a few hours' time. The company should reasonably have known that if the reinstallation were made the motor and pump would resume operation. And if after receiving the request, the company delayed for an unreasonable length of time in effecting the reinstallation, it was negligent in its duty to Williams with liability in damages for the resulting injury to the mining property from flooding. The evidence and its reasonable inferences presented that issue and therefore the court did not err in its determination to submit the cause to the jury.

■ Complaint is made respecting the testimony given by Williams in the nature of an estimate of the loss suffered as the result of damage to Winze No. 2 in the mine. The argument is that there was no evidence concerning the dimensions or tonnage of any ore body in the mine, no evidence concerning the cost of extracting the ore, and no evidence concerning the royalty or other rental paid or payable; and that in the absence of evidence relating to those elements, the mere estimate of Williams threw no light upon the amount of loss suffered. It is the general rule that an owner familiar with property which he occupies and operates in a business may testify concerning its value when that issue becomes material, even though he may not be an expert as to values generally of property of that kind. Baltimore American Ins. Co. v. Pecos Mercantile Co., 10 Cir., 122 F.2d 143. Williams was a chemical engineer, was experienced in the mining business, had operated other mines, and was familiar with the mine involved here. His testimony in the nature of an estimate of loss suffered by reason of the damage to the winze was admissible; and, standing alone, it was sufficient to take the case to the jury on that element of damage. The dimensions or tonnage of the ore body, the cost of extracting the ore, and the royalty or other rental paid or payable, were matters appropriate for exploration on cross examination. But the absence of testimony relating to those elements did not render inadmissible the testimony of the witness giving his estimate of the loss, and it did not render the testimony ineffective in taking the case to the jury on that particular item of damage.

■ The further contention is that the damage to the property, particularly the winze, was too speculative. Recovery of damages cannot be had where there is substantial uncertainty as to whether a tort was committed, or where the tort was of such nature as to preclude the ascertainment of the amount of the damages with a reasonable approximation. But damages may be recovered in a case where there is no uncertainty as to whether the rights of plaintiff have been tortiously invaded, even though there may be some uncertainty respecting the amount of the damages suffered. The amount need not be proved with absolute certainty. It is enough if the evidence adduced is sufficient to enable the court or jury as the case may be to make a fair and reasonable approximation. Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S. Ct. 248, 75 L.Ed. 544; Hedrick v. Perry, 10 Cir., 102 F.2d 802. The evidence adduced met these exactions.

■ The court refused to give to the jury several instructions requested by the company. It would not serve any useful purpose to detail the several instructions or to discuss them seriatim. With the exception to which reference will presently be made, the general instructions of the court adequately covered the issues submitted to the jury. And we have held without deviation that a court is not required to give requested instructions even though they be correct statements of applicable law if the matters to which they relate have already been appropriately and adequately covered in the instructions given. George v. Wiseman, 10 Cir., 98 F.2d 923; Martin v. United States, 10 Cir., 100 F.2d 490, certiorari denied, 306 U.S. 649, 59 S. Ct. 590, 83 L.Ed. 1048; Troutman v. United States, 10 Cir., 100 F.2d 628; Metropolitan Life Ins. Co. v. Banion, 10 Cir., 106 F.2d 561; Hancey v. United States, 10 Cir., 108 F.2d 835; Mid-Continent Pipe Line Co. v. Whiteley, 10 Cir., 116 F.2d 871; Brigham Young University v. Lillywhite, 10 Cir., 118 F.2d 836, 137 A.L.R. 598, cer-

tiorari denied, 314 U.S. 638, 62 S.Ct. 73, 86 L.Ed. 512; Oliver v. United States, 10 Cir., 121 F.2d 245, certiorari denied, 314 U.S. 666, 62 S.Ct. 124, 86 L.Ed. 533; Dyess v. W. W. Clyde & Co., 10 Cir., 132 F.2d 972; Berenbeim et al. v. United States, 10 Cir., 164 F.2d 679.

■ The substance of requested instruction No. 12 was that if the jury should find that at some time following the failure of the pump to operate Williams requested the company to switch back to the transformers formerly in use; that after receiving the request the company failed to make the switch back within the time a reasonably prudent person engaged in the business of supplying electric energy to its customers would have made it under the same or similar circumstances; and that as the result of the delay Williams suffered damages, still the verdict for Williams should be limited to the damages which accrued after the time within which the company should have made the reinstallation in compliance with the request. The instructions of the court failed to make it clear that the company was under no duty to reinstall the transformers formerly in use until requested to do so; and that it would not be liable for any damage except that sustained following an unreasonable delay in making the reinstallation after receiving the request. Requested Instruction No. 12 covered that feature of the case and it should have been given, either literally or in substance.

The judgment is reversed and the cause remanded.