### STOCKYARDS NAT. BANK OF SOUTH OMAHA v. BRAGG et al.

### BRAGG et al. v. STOCKYARDS NAT. BANK OF SOUTH OMAHA.

(Circuit Court of Appeals, Eighth Circuit. October 22, 1923.)

Nos. 6379, 6383.

1. **Courts ⊜⇒279—Suit to foreclose mortgage within jurisdiction of court, under pleadings, but jurisdiction ousted by proof.**

A complaint in an action by a citizen and resident of Nebraska to foreclose a mortgage on real estate in Utah, alleging defendants to be citizens and residents of Wyoming, *held* to make a case within the jurisdiction of the federal District Court for the state of Utah, under Judicial Code, § 57 (Comp. St. § 1039), but such jurisdiction was ousted on proof by mortgagors of citizenship and residence in the state of Nebraska.

2. **Courts ⊜⇒272—One moving into another state becomes "citizen" and "resident" at once.**

If one left one state and went into another with the intention of remaining there, his domicile was thereupon immediately changed, and he at once became a "citizen" and "resident" of the state to which he moved, as affecting jurisdiction of federal courts, under Judicial Code, § 57 (Comp. St. § 1039), and it was immaterial that he did not find employment he sought before suit was brought, and that he would not remain therein indefinitely without anything to do.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Citizen; Resident.]

3. **Domicile ⊜⇒10—Finding of no change of domicile held against weight of evidence.**

In action in federal court. where question arose as to jurisdiction, finding by court that defendant, who went from one state to another, did not change his domicile, *held* against the weight of the evidence.

4. **Citizens⋅ ⊜⇒11—"Citizenship" constituted by residence with intention to remain.**

When residence is coupled with an intention that it shall be permanent, or for an indefinite or unlimited time, and without intention of returning to the former place of residence, or establishing a home elsewhere, it constitutes "citizenship."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Citizenship.]

Appeal and Cross-Appeal from the District Court of the United States for the District of Utah; Tillman D. Johnson, Judge.

Suit by the Stockyards National Bank of South Omaha against Laura I. Bragg and others. From a decree, both parties appeal. Reversed, with directions.

P. T. Farnsworth, Jr., of Salt Lake City, Utah (Henry E. Maxwell, of Omaha, Neb., Waldemar Van Cott, of Salt Lake City, Utah, and Edgar M. Morsman, Jr., of Omaha, Neb., on the brief), for Stockyards Nat. Bank.

H. C. Brome, of Basin, Wyo. (Thomas M. Hyde, of Basin, Wyo., and W. T. Gunter, of Salt Lake City, Utah, on the brief), for Bragg and others.

Before LEWIS, Circuit Judge, and VAN VALKENBURGH and KENNEDY, District Judges.

LEWIS, Circuit Judge. This suit was brought February 17, 1922, by the Stockyards National Bank of South Omaha, Nebraska, to foreclose a mortgage on real estate in Salt Lake City, to sell that real estate under the order and direction of the court for the purpose of paying the mortgage debt, to impound the rentals to accrue pending the cause and to appoint a receiver to take immediate possession of the property, with power to collect and hold the rents and profits for application in payment of the debt. The defendants are several persons in actual possession, alleged to be residents and citizens of Utah, and also the mortgagors, Robert R. Bragg, his wife, his two brothers, his sister and his mother, all of whom are alleged to be citizens and residents of the State of Wyoming.

[1] The complaint thus made a case within the jurisdiction of the court under section 57 of the Judicial Code (Comp. St. § 1039). Greeley v. Lowe, 155 U. S. 58, 15 Sup. Ct. 24, 39 L. Ed. 69; Texas Co. v. Central Fuel Oil Co. 194 Fed. 1, 114 C. C. A. 21; Kentucky Coal Lands Co. v. Mineral Development Co., 219 Fed. 45, 133 C. C. A. 151. But the defendant Robert R. Bragg, by his separate verified answer filed March 31, 1922, in addition to affirmative defenses which he set up, challenged the jurisdiction of the court over the controversy, by plea alleging that he was not then, nor at the time of the commencement of the suit, a citizen and resident of the State of Wyoming, but to the contrary he alleged the fact to be that he was at the time of the commencement of the suit and ever since had been a citizen and resident of the State of Nebraska, the same State of which the complainant was a citizen and resident; and the other defendants in their separate answers made the same challenge. This, if true, ousted the court of jurisdiction over the controversy. Cases supra. For the purpose of avoiding the useless expense of a trial on the merits, if the court was without jurisdiction, it was stipulated that the pleas to jurisdiction should be heard and determined before going to trial on the merits. All of the testimony bearing upon the preliminary inquiry was taken and submitted in depositions, and on its consideration the court on June 9, 1922, overruled the pleas and the case went to trial. From final decree both parties have appealed, the mortgagors, defendants below, assigning as error, among others, the action of the court in finding that Robert R. Bragg was a citizen and resident of Wyoming and not a citizen and resident of Nebraska at the time the suit was instituted. We are constrained to hold that the finding of the trial court on that subject is against the great weight of the testimony, and is without support. In our opinion there is no room for doubt, that before the suit was brought Robert R. Bragg had abandoned his home and residence in Wyoming and had become a resident of Omaha, Nebraska, with the intention of permanently remaining there. His testimony was

this: At the time his deposition was taken, April 17, 1922, he and his wife were living at 2123 Cass Street, Omaha, keeping house there. They had resided at that number since March 10th. They had no children. Up to December 22, 1921, they resided at No Wood, Wyoming. At that time he was acting postmaster there and had had charge of the office for more than a year. He was experienced in and well understood the live stock business and had determined in December, 1921, to make Omaha his residence and there engage in that business as the employé of others at the Omaha Stockyards. Before leaving No Wood on December 22d he had made application to Swift & Co. and Armour & Co. for employment at Omaha in the live stock business. On that day he and his wife left No Wood for Burlington, Iowa, to spend the Christmas holidays, with no intention of returning to No Wood to reside, but with the intention of going from Burlington to Omaha and residing permanently at the latter place. About the middle of January, leaving his wife at Burlington until he could conveniently arrange to take her to Omaha, he went back to No Wood to turn the postoffice over to another man. After he had done so and had sold the furniture which he had used in housekeeping at No Wood he then left No Wood and reached Omaha on February 10th, and has remained there ever since. His wife came from Burlington to Omaha early in March, and they at once took up housekeeping at the place above noted. On the day he arrived he saw the superintendent of Armour & Co. about employment, and has since sought employment from others in the live stock business, and also from the Standard Oil Co. at that place, but had not found a place to work up to April 17th, when he testified, but he expressed his confidence in being "able to get employment here before very long," that a live stock commission company there had told him that they would have an opening for him about the middle of July, and that he had been assured of employment later in the season. Mrs. Bragg testified that she had not been back to Wyoming since they left there in December, 1921, and that she did not expect to return there at the time they left, that they went to Burlington to spend Christmas with her family, that she expected to go from there to Omaha to join her husband and there make their home, that when they left Wyoming it was their intention, as discussed between her and her husband, that they would maintain their residence in Omaha after their visit to Burlington. She went from Burlington to Omaha on March 9th and stayed at the Paxton Hotel, where her husband was then staying, until March 12th; and they then went to 2123 Cass Street, where they had since resided. Mr. McCullough, who was engaged in the live stock commission business at Omaha, testified that he met Bragg in the Exchange Building at South Omaha either the last week in January or the first week in February, 1922. He asked Bragg what he was doing there and Bragg replied that he was living there, and said he was figuring on going to work for Armour & Co. unless he could find a better position, and asked the witness if he had an opening for him. Mr. McCullough replied, "Not now, but if it was the first of June or first of July I could use you." He was acquainted with Bragg before meeting him on this occasion. Mr. Robertson, of the Standard

Oil Co., testified that he had known Bragg for several years, that on February 13, 1922, Bragg came into his office and said that he was going to locate in Omaha and inquired if witness knew of a position that he could get, that he was residing at the Paxton Hotel at that time and that "he was here temporarily until he was able to find a position and find a place so he could bring his wife here." Mr. Thomas, Deputy U. S. Marshal at Omaha, testified that he served Bragg with the writ issued in this case on March first at the Paxton Hotel, that he asked Bragg where his wife was so he might serve her, to which Bragg replied that he was expecting her within a week and that they would probably be here, that he was thinking of locating here. On cross-examination these questions were asked Robert R. Bragg and he made these answers:

"Q. Of course, unless you do succeed in getting some employment it is not your expectation to remain here, is it?

"A. Well, I will be able to get employment here before very long.

"Mr. Maxwell: Moved to strike that answer, as not responsive to the question.

"A. Well, no, I would not stay here without anything to do.

"Q. So, as a matter of fact, Mr. Bragg, your coming to Omaha was a matter of investigation, and with the hope that you would be able to secure employment here and make your home here?

"A. Well, I have been assured of employment later in the season.

"Mr. Maxwell: Moved to strike out the answer as not responsive to the question.

"A. Yes.

"Q. And your presence here at this time is with that expectation? A. Yes, sir."

Bragg might have said with equal truth that other contingencies could arise that would cause him to leave Omaha. On redirect examination Mr. Bragg said:

"I have received assurances of employment from the Charles O. Robinson Commission Company. They said they would have an opening about the middle of July."

[2-4] If Mr. Bragg went to Omaha on February 10th with the intention of remaining there, his domicile was thereupon immediately changed from No Wood to Omaha, and he at once became a citizen and resident of the State of Nebraska. Morris v. Gilmer, 129 U. S. 315, 328, 9 Sup. Ct. 289, 32 L. Ed. 690. He testified that was his intention, his wife corroborates him, and his conduct supports that testimony. He and his wife testified that when they left No Wood on December 22d they had no intention of returning there to reside. His conduct supports that testimony. He had made application to Swift & Co. and Armour & Co. for employment at Omaha before he left No Wood. During January he went back there and resigned as postmaster and turned the office over to another man, and he sold off the furniture which they had used there. His evident purpose disclosed by his conduct was to obtain employment in the live stock business at Omaha. He went there with that intention on February 10th, has remained there and expressed confidence at the time he testified of obtaining the employment he sought. His wife joined him within a month after his arrival, and they at once went to housekeeping. The fact that he did

not find the position he sought before the suit was brought, and the further fact, if it may be said to be a fact, that he would not remain there indefinitely without anything to do, we regard as immaterial. Denver v. Sherrett, 88 Fed. 226, 31 C. C. A. 499, is not to the contrary. This court held that Miss Sherrett had not changed her domicile, because she went to Colorado with the intention of returning to her home in Kansas if she should not be successful in obtaining a position as teacher in the Denver schools at the next approaching term. She received a personal injury shortly after arrival, which was the subject matter of that litigation, and was not employed as a teacher. Here Mr. Bragg went to Omaha on February 10th with the intention and purpose of remaining there. At that time he had no doubt, we are persuaded by the evidence, of finding employment, and he had no thought of returning to Wyoming or going elsewhere. We consider his statements on cross-examination, quoted above, and the testimony of witness Thomas that Bragg told him in March "that he was thinking of locating here." of negligible weight; likewise the testimony of Mr. Robertson. What Bragg did was all that was necessary in the way of acts and conduct to bring about a change of his domicile as of February 10, 1922, and if he intended to permanently remain in Nebraska when he reached Omaha on that day, he was then a citizen and resident of that State and continued so to be unless and until he might acquire thereafter a domicile elsewhere. A determination of the inquiry depended solely on the question of his intention, and we think the great weight of the evidence was contrary to the finding of the court below. When residence is coupled with an intention that it shall be permanent, or for an indefinite or unlimited time and without intention of returning to the former place of residence, or establishing a home elsewhere, it constitutes citizenship. Gilbert v. David, 235 U. S. 561, 35 Sup. Ct. 164, 59 L. Ed. 360; Marks v. Marks (C. C.) 75 Fed. 321; Hammerstein v. Lyne (D. C.) 200 Fed. 165; Delaware L. & W. R. Co. v. Petrowsky, 250 Fed. 554, 162 C. C. A. 570; Sullivan v. Lloyd (D. C.) 213 Fed. 275. For the reasons stated it is our conclusion that the Federal Court was and is without jurisdiction.

The decree will be reversed, with directions to vacate it and all orders made in the cause and to set them aside, and to dismiss the complaint at complainant's costs.