### MID-CONTINENT PIPE LINE CO. v. WHITELEY.

No. 2120.

Circuit Court of Appeals, Tenth Circuit.

Dec. 30, 1940.

Rehearing Denied Feb. 5, 1941.

R. H. Wills and I. L. Lockewitz, both of Tulsa, Okl. (J. C. Denton, J. H. Crock-

er, and J. P. Greve, all of Tulsa, Okl., on the brief), for appellant.

B. A. Hamilton, of Tulsa, Okl. (S. J. Clendinning, William M. Taylor, and Leslie W. Lisle, all of Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

Alonzo Burr Whiteley sued Cosden Pipe Line Company—its corporate name was subsequently changed to Mid-Continent Pipe Line Company—and Mid-Continent Petroleum Corporation, to recover damages for personal injuries caused by the negligent operation of an automobile. The case was dismissed as to the defendant Mid-Continent Petroleum Corporation; plaintiff prevailed against the defendant Mid-Continent Pipe Line Company; and it appealed.

The first question presented relates to the jurisdiction of the court. Plaintiff relied upon diversity of citizenship and the requisite amount in controversy as the basis of jurisdiction. The specific and narrow point in issue is whether at the time of the institution of the suit plaintiff had abandoned his residence in Oklahoma, had established residence in California, and was a bona fide citizen of that state, within the meaning of the first paragraph of Section 24 of the Judicial Code, as amended, 28 U.S.C.A. § 41. The suit was instituted on February 6, 1939, and it was alleged in the complaint that plaintiff was at all times therein referred to, a resident and citizen of Tulsa County, Oklahoma; that defendant Cosden Pipe Line Company was a corporation organized under the laws of Oklahoma; and that defendant Mid-Continent Petroleum Corporation was a corporation organized under the laws of Delaware. Defendant Cosden Pipe Line Company, appearing specially for the purpose of attacking the jurisdiction of the court, and for no other purpose, filed a motion to dismiss the action for want of complete diversity of citizenship. Plaintiff made application to amend the complaint by interlineation to allege that at the time of the filing of the suit he was a bona fide citizen and resident in good faith of California. The court permitted the amendment; and by answer the defendants specifically denied that plaintiff was a resident and citizen of California and affirmatively alleged that he was a resi-

dent and citizen of Oklahoma. The jurisdictional issue thus presented was submitted to the court in advance of the trial on the merits to a jury. The court heard evidence and found that at the time of the commencement of the action plaintiff was a resident and citizen of California. The finding is challenged on the ground that it is not supported by the evidence, is against the evidence, and is clearly wrong.

■■ Plaintiff had been a resident of Oklahoma. He contends that he ended his residence and citizenship there and established residence and citizenship in California late in December, 1938, less than two months prior to the institution of the action. Without any attempt to draw a refined distinction between the two, but using the terms synonymously, residence or domicile, once fixed, remains until a new one is established. And two elements are essential to the establishment of a new residence or domicile. One is intention, and the other is some act or acts to carry the intention into effect. Frequently the question depends upon no one fact or circumstance, but is to be determined upon all the facts and circumstances considered as a whole.

■ The allegation of citizenship in California was not enough. When drawn in question, the burden rested upon plaintiff to prove by a preponderance of the evidence that he was a citizen of that state. McNutt v. General Motors Acceptance Corporation, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; KVOS, Inc., v. Associated Press, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183; Town of Lantana, Fla. v. Hopper, 5 Cir., 102 F.2d 118.

■ There was testimony which fairly tended to prove these facts. Plaintiff was born in Arkansas. In 1924, when he was ten years of age, he moved with his family to a farm in Oklahoma, and his father became a tenant farmer there. The accident occurred two years later, when plaintiff was twelve years old. Although he made short trips to Arkansas and Missouri, and one to California in 1937, he continued to reside in the home of his parents in Oklahoma until 1938, but spent a substantial part of his time in hospitals and elsewhere. He liked California while there in 1937, and formed the intention to return there at some future time to make it his home. He was single; one of his younger brothers, likewise single, moved out there in 1938, and wrote plaintiff urg-

ing him to come and join him. He went in December, 1938. Before departing he made up his mind to make it his home, and that had been his intention ever since. He took along in a suitcase all of his possessions, consisting of clothing and personal effects. Before leaving he told his father and mother, and four other persons separately, that he was going to California to live with his brother. He had a somewhat tentative and rather indefinite promise of a job out there; and his brother stated in one letter that he had work and could support both of them until plaintiff could find a job. When he arrived his brother was living in an apartment with three other employees. Plaintiff joined them, and the five ate and slept in the same apartment. Plaintiff did the cooking and took care of the apartment, but did little if any other work. A suit upon this same cause of action was and had been pending in the state court for about three years. Plaintiff did not advise his attorneys that he was going to California, or that he intended to establish residence there; but while there he wrote one of them, stating that he arrived a few days previously, asking when it was expected that the case would come up, stating that he had stayed in Oklahoma two years hoping that it would come to trial, expressing the hope that it would not be postponed, and asking whether anything could be done because of his having moved to California. He returned to Oklahoma about February 1, 1939, and went to the home of his parents. The threefold purpose in returning was to see what could be done about his long pending case, to see his family, and to testify as a witness in a criminal case in the state court. He did testify in the criminal case, but the record presents confusion as to the date. He stated in the course of his testimony that he lived in Oklahoma. He returned to California early in March, 1939, again joined his brother, and remained there until early in June. He cooked and kept house for his brother, two other workmen, and himself. The apartment was rented in the name of one of the laborers; the brother and the other laborers furnished all of the household expenses of the entire group, including plaintiff. Plaintiff went back to the home of his parents early in June and remained there for about two weeks, this case being the occasion for the trip. He then again returned to California. In the meantime, his brother had moved to an-

other town. He joined his brother, remained there until sometime in September, then went once more to the home of his parents, and remained there until the time of the hearing in November. He did a little work at interspersed intervals after returning to Oklahoma, but had no fixed employment. When leaving California in February, he told the men with whom he had lived in the apartment that he was going to Oklahoma on a visit and would be back soon; and when departing in September, he left in California a suit, some shirts, and a few other personal effects. There was a direct conflict in the testimony as to whether plaintiff stated to a friend after his return to Oklahoma in February that he had decided to take a vacation; that he had the choice of several places, but thought he would go to California; and that his reason for leaving Oklahoma was in order to maintain his suit in the federal court. The explanation offered for the allegation in the complaint that plaintiff was a citizen of Oklahoma, was that one of the attorneys directed his stenographer to copy the petition in the case in the state court with the appropriate changes, and that she inadvertently overlooked making the change in respect to residence of plaintiff. Plaintiff never registered as a voter or voted in California. He did not register for employment during his stay there from December, 1938, to February, 1939, but he did register after his return in March, 1939; and he likewise registered on different occasions in Arkansas. He never voted in Oklahoma, but he registered there in June, 1938. His brother was registrar, and was compensated on the basis of the number of persons registered. He asked plaintiff to register, plaintiff replied that it was agreeable with him if it would help the brother, and the brother made up the record. If plaintiff went to California in December, 1938, with a present intention and purpose of remaining and establishing his residence there, he thereupon became and was at the institution of the suit a citizen of that state, within the meaning of the first paragraph of section 24 of the Judicial Code, supra. Chicago & Northwestern Ry. Co. v. Ohle, 117 U.S. 123, 6 S.Ct. 632, 29 L.Ed. 837; Morris v. Gilmer, 129 U.S. 315, 9 S.Ct. 289, 32 L.Ed. 690; Stockyards National Bank v. Bragg, 8 Cir., 293 F. 879. The evidence and the inferences and deductions fairly to be drawn from it presented a sharp conflict upon that question of fact.

But the court heard the evidence, and saw and observed the witnesses while testifying; and it cannot be said that the finding was clearly erroneous, due regard being given to the opportunity of the court to judge of the credibility of the witnesses. The finding should therefore be sustained. Rule of Civil Procedure 52(a), 28 U.S.C.A. following section 723c.

 J. B. Cooper owned the automobile in question, and he was driving it at the time of the accident. It is contended that he was operating it under such circumstances that the pipe line company is not liable to plaintiff, even though the injuries complained of were proximately caused by his negligence. The doctrine of respondeat superior has application in Oklahoma only when the relation of master and servant exists between the wrongdoer and the person sought to be charged at the time and in respect to the transaction out of which the asserted ·injury arises. Fairmont Creamery Co. of Lawton v. Carsten, 175 Okl. 592, 55 P.2d 757. The burden rested upon plaintiff to show that Cooper was operating the automobile within the scope of his employment, and in relation to the business of his master. Drake v. Specht, 175 Okl. 414, 53 P.2d 235; Spartan Aircraft Co. v. Jamison, 181 Okl. 645, 75 P.2d 1096. But there was no substantial conflict in the evidence concerning the ownership of the automobile, the nature of Cooper's employment, or the circumstances under which the automobile was being operated. The question therefore is one of law, not of fact to be resolved according to the burden of proof. Branham v. International Supply Co., 166 Okl. 273, 27 P.2d 354; Fairmont Creamery Co. v. Carsten, supra.

 In Mead Bros. v. State Industrial Commission, 144 Okl. 279, 291 P. 571, the claimant was employed to fire boilers in connection with the drilling of a well. On the day in question he was driving from town to the place of work in an automobile belonging to the driller; the automobile overturned; the claimant was injured, and he sought compensation under the Work· men's Compensation Act of the state, 85 Okl. St.Ann. § 1 et seq. He did not rely upon an express contract on the part of the employer to furnish him transportation to and from the place of work. Instead, he relied exclusively upon an implied agreement. Saying that the fact that the place of work was a great distance from available living quarters, that the claimant did not have an automobile, that the employer would not hire a driller unless he had an automobile, that the employer expected the driller to use his automobile in transporting tools and other equipment to and from the place of work, and that one of the co-laborers was accustomed to haul the claimant and other employees, constituted no basis for the conclusion that such an implied agreement existed, the court held that the injury to the employee did not "arise out of and in the course of his employment", within the meaning of the statutes authorizing workmen's compensation. In Oklahoma Natural Gas Corporation v. Union Bank & Trust Co., 149 Okl. 12, 299 P. 159, it was the custom of the employer to furnish transportation by trucks for its employees from a certain designated supply house to the place of work, and to return them in like manner to the supply house at the close of the day's work; and the employees were directed to assemble and report for duty at the supply house preparatory to being transported to work. On the morning in question, the claimant did not go to the supply house. On the contrary, he went by streetcar to a point about fifteen blocks from the place of work. While walking from that point to the place of work he was struck by an automobile, and sought an award of workmen's compensation for the injuries sustained. The court said that if an employee sustains a compensable injury during the time he is actually engaged in performing the work of his employer, he is entitled to an award; but on the other hand, if he is engaged in work or performing other acts of his own choosing, he is not entitled to compensation. The court held that the injury in question did not arise out of and in the course of the employment. The case of Wilson & Co. v. Shaw, 157 Okl. 34, 10 P.2d 448, is closer. There McCallon was employed to purchase, collect and transport poultry to the plant of his employer. He was paid daily wages for his services, he was also paid for the use of his truck on a mileage basis, and he worked on the days he was directed to do so. He unloaded some poultry at the plant, at his own suggestion he placed some empty coops on his truck in order that he might not have to go back to the plant to procure coops for use on his next trip, and he then started home. While he was en route, plaintiff was struck by one of the coops, and sued the master for damages. The court said that the employment of McCallon did not continue after he left the prem-

ises of the master at the close of the day's work, unless it was continued by the terms of the employment or its continuance should be implied from the duties imposed upon him by the employment. The court then pointed out that according to the record the employer had no control over the employee after he had unloaded the poultry and left the plant; and that the employer had no control over the truck, and no authority to say when or how it should be driven, except during the time it was being driven in the purchase, collection and transportation of poultry to the plant. And the court then concluded that in such circumstances, it could not be implied that the employment continued after the completion of the day's work by the delivery of the poultry at the plant. And City of Ardmore v. Hill, 146 Okl. 200, 293 P. 554, is thought to be still closer, and controlling. There Harston was an employee of the city. He repaired bursted water pipes. The city furnished him a car for use in the performance of his duties. He kept it at his residence in order that it might be available for immediate use in case of emergent calls. He sometimes received such calls there, at day, at night, or on Sunday, and he used the car in going to the places where the bursted pipes required attention. He was using the car at the time the collision occurred in going to or returning from a grocery store for the purpose of purchasing groceries for his family. The court said that the question was whether the city could be held liable for damages growing out of a collision which occurred at a time when the employee was using the car for his own personal use and not in the performance of any duties which he owed to the city, except to have it available for emergency service should such service become necessary. Emphasizing that he had lawful charge of the car for that purpose, that he knew he might be required to use it at any moment in the performance of his duties, that notice of the necessity to use it might come to him at his home or elsewhere, the court held that the city could not escape liability on the ground that he was acting in his own behalf and outside the scope of his employment. Here, Cooper was employed by the pipe line company as a field gauger. He resided in Tulsa, he had a telephone at his residence, he furnished his number to most of the pumpers so that they could call him, they did frequently call him there in connection with his work, he went from home to various leases as

directed to run oil and then back again, he made out his reports there because it was more convenient for him, and he was subject to the control of the company, night and day. He regularly used the automobile in question in going from his residence to the place of work, from place to place as the work required, and then back home again; and the company paid him regularly fifty dollars per month to be applied on its upkeep and maintenance. At the time of the accident he was on the way in the morning from his residence to a certain lease to run oil for the company, and he had in the car certain equipment belonging to the company to be used in that behalf. It was his custom to keep such equipment in the car, at his residence and elsewhere, in order that it might be more convenient for ready use in his work. These facts and circumstances, extending over a long period of time, leave little room for doubt that it was mutually implied and understood between the employer and employee that the latter should use the car in making such trips from his residence to the place or places of his work, from place to place to run oil, and then back to his home. It would be strained and unreasonable to suggest that in making the monthly payments for the upkeep and maintenance of the car, the company contemplated that Cooper should merely use it while going from one lease to another, but not in going from his home to leases and back again. That he should use the car in going to and from his work and from place to place, all in connection with his work for the company, was implied in the arrangement. It was implicit in the relationship existing between the parties. That being true, the pipe line company cannot be heard to escape liability on the ground that Cooper was operating the car outside the scope of his employment and not in relation to the business of his master. City of Ardmore v. Hill, supra.

█ Complaint is made that the court permitted plaintiff, in the course of cross-examination of Cooper, to elicit proof which tended to prove negligence under the last clear chance doctrine—an issue not tendered by the pleadings. Cooper testified on cross-examination that the brakes were in good condition, that he was traveling at the rate of fifteen or eighteen miles per hour, that traveling at fifteen miles per hour the car could be stopped in forty or fifty feet, and that plaintiff was probably thirty or forty feet ahead when he first

observed him. No cause of action was pleaded under the last clear chance doctrine, and of course evidence offered for the purpose of proving negligence under that rule was inadmissible. But defective brakes and excessive speed were pleaded as actionable negligence. There was direct conflict in the evidence respecting the speed of the car, and in relation to other matters immediately preceding and attending the accident. Plaintiff testified that the car was traveling at between forty-five and fifty-five miles per hour, and Cooper had testified on direct examination that its speed was eighteen or twenty miles per hour. The challenged evidence was admissible upon the issue of defective brakes, upon the issue of excessive speed, and as bearing upon the credibility of the witness. It manifestly was offered upon those issues—not for the purpose of establishing liability under the last clear chance doctrine. The court did not submit to the jury the question of liability under that doctrine, and it is clear that the verdict and judgment were not predicated upon it.

One remaining contention merits a word. Thirty-four requested instructions were submitted, the court refused all of them, and the action is challenged in respect of the refusal of certain of them. It would not serve any useful purpose to discuss the instructions seriatim. The court instructed the jury fully, fairly, and accurately upon every material issue in the case, and no exceptions were taken to the instructions. This court has held repeatedly and without deviation that it is not prejudicial error to refuse a requested instruction, even though it is an accurate statement of law, if the matter has already been fairly and correctly covered in the general instructions given. Tingley v. United States, 10 Cir., 34 F.2d 1, certiorari denied, 280 U.S. 598, 50 S.Ct. 69, 74 L.Ed. 644; Bowater v. Worley, 10 Cir., 57 F.2d 970; Utah Power & Light Co. v. Woody, 10 Cir., 62 F.2d 613; Detroit Fire & Marine Ins. Co. v. Oklahoma Terminal Elevator Co., 10 Cir., 64 F.2d 671; George v. Wiseman, 10 Cir., 98 F.2d 923; Troutman v. United States, 10 Cir., 100 F.2d 628; Metropolitan Life Ins. Co. v. Banion, 10 Cir., 106 F.2d 561; Hancey v. United States, 10 Cir., 108 F.2d 835.

Other matters are presented. These include the contention that counsel for plaintiff was guilty of misconduct, and that the court should have declared a mistrial. All have been examined with care, and we fail to find substantial merit in them.

The judgment is affirmed.